UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KING SHENG CO., LTD, et al., | ) |
| | ) |
|   Plaintiffs, | ) |
| | ) |
|     vs. | ) Cause No. 1:16-cv-3256-WTL-MPB |
| | ) |
| HOLLYWOOD ENGINEERING, INC., | ) |
| | ) |
|   Defendant. | ) |

## ENTRY REGARDING MOTION TO STAY

This cause is before the Court on the Defendant's Motion to Stay Proceedings Pending Reexamination by the United States Patent and Trademark Office (Dkt. No. 59). The motion is fully briefed and the Court, being duly advised, **GRANTS IN PART** the motion for the reasons set forth below.

The Plaintiffs in this case allege that several of the products sold by the Defendant infringe upon a patent held by Plaintiff David Tsai and exclusively licensed by Plaintiff King Sheng Co., Ltd. (hereinafter referred to as the "'816 Patent"). The Defendant has filed a counterclaim in which it seeks declaratory judgment that the '816 Patent is unenforceable as to it on the grounds of waiver, equitable estoppel and laches; that its products do not infringe the '816 Patent; and that the '816 Patent is "invalid and/or unenforceable (at least as to [the Defendant] itself)." Dkt. No. 17 at 12. The products at issue are bicycle racks used to carry bicycles on vehicles. King Sheng and the Defendant are competitors in the bicycle rack market.

In the instant motion, the Defendants argue that this case should be stayed because on June 22, 2017, the United States Patent and Trademark Office ("USPTO") issued a Decision

Granting Ex Parte Reexamination of claims 1-2, 4-7, 14-17, and 20 of the '861 patent. The Plaintiff objects to a stay being entered.

The parties agree on the relevant factors to be considered by the Court in deciding whether a stay is appropriate during the reexamination process: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the Court. Dkt. No. 59 at 4 (citing *Arrivalstar S.S. v. Canadian Nat'l Railway Co.*, 2008 WL 2940807, at *2 (N.D. Ill. Jul. 25, 2008); *Cook Inc. v. Endologix, Inc.*, 2010 WL 325960, at *1 (S.D. Ind. Jan. 21, 2010); *Tap Pharmaceutical Prods., Inc. v. Atrix Laboratories, Inc.*, 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004); Dkt. No. 63 at 4 (citing *Cook*, 2010 WL 325960, at *1 (*citing Centillion Data Sys., LLC v. Convergys Corp.*, 2005 WL 2045786, at *1 (S.D. Ind. Aug. 24, 2005) (*citing Xerox Corp. v. 3 Com Corp*., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999))).

The Defendant argues that the second and third factors weigh in favor of a stay in this case:

> The proceedings before the USPTO are likely to alter substantially the issues presented in this litigation by cancelling some or all of the claims that are currently under reexamination. Therefore the scope and nature of the present allegations are likely to change significantly. There are twenty claims under the '816 Patent, and eleven of those are subject to the reexamination proceedings. Therefore it makes little sense for the parties to address the claims in any meaningful way until the USPTO has completed its proceedings. Moreover, the reexamination may greatly reduce the burden on the Court and the parties by invalidating claims of the '816 Patent and perhaps negating entirely the necessity of trial.

Dkt. No. 59 at 2. The Defendant further notes that "[t]his litigation is still in its early stages. Written discovery and document production have commenced and are ongoing. The parties have not exchanged proposed claim constructions, and have not briefed to the Court any claim

construction issues. There is almost infinitely more litigation potentially ahead of the parties than has been conducted thus far in this case." *Id.* at 3. A stay, the Defendant argues, could

> significantly reduce the cost and burden of litigation by postponing this action until the USPTO determines the ultimate contours of the patent claims. The alternative is to undertake these costly and time-consuming activities now, only to re-do them later to account for the changed nature of the reexamined claims—or, worse yet, to realize that some or all of the effort was wasted because some or all of the claims were canceled.

*Id.* at 8.

The Plaintiffs counter that

> the net effect of a stay will likely be de minimis, because the results of an *ex parte* reexamination have no preclusive effect unless the USPTO cancels the claims in Plaintiff's patent in their entirety. According to USPTO's statistics, an *ex parte* reexamination results in cancellation of all claims only 13% of the time. *See* Bruce Decl. Exh. A p. 1. Therefore, there is an 87% chance that, should the Court grant a stay, the Court and the parties will still be required to litigate all the issues currently before the Court.

Dkt. No. 63 at 5. That argument ignores entirely the possibility that the reexamination process will result in modification of some or all of the claims relevant to this case and therefore affect the issues in this case even in the absence of a complete cancellation of the claims. *Cf. Inogen, Inc. v. Inova Labs, Inc.*, 2012 WL 4748803, at *2 (C.D. Cal. Mar. 20, 2012) ("'[W]aiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate trial by providing the court with expert opinion of the [US]PTO and clarifying the scope of the claims.'") (quoting *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995)).

As is true in any case in which a stay pending reexamination is requested, it is impossible to know at this point the extent to which the reexamination process ultimately will alter the litigation of this case, or even if it will at all. It is clear, however, that there is a possibility that it will reduce or even eliminate the burden of litigation on the parties and the Court. This

possibility must be weighed against the extent to which the Plaintiffs would be prejudiced by a stay.

The Defendant argues that far from prejudicing the Plaintiffs, "the stay will enable King Shen [sic] to avoid the significant burden and expense of the claim construction process, infringement contentions and validity contentions on claims that are likely to be canceled or amended as a result of the reexamination process." Dkt. No. 59 at 5. The Plaintiffs, on the other hand, argue that they would be prejudiced by the requested stay because the Defendant would "be allowed to continue to erode Plaintiffs' business, brand recognition, as well as revenues for several years if a stay [were] granted." Dkt. No. 63 at 1; *see also id.* at 5 ("In staying the proceeding for three to six years, Hollywood will permanently erode Plaintiffs' business by continuing to offer infringing products."); *id.* at 7 (The Defendant "continues to infringe the Patent-in-Suit, taking away Plaintiffs' business, thereby irreparably harming Plaintiffs.").

In its reply brief, however, the Defendant states that it "ceased selling the accused products shortly after this lawsuit was filed, the last of the relevant inventory having been disposed of by October, 2016." Dkt. No. 66 at 3 (citing declaration found at Dkt. No. 52-1 at ¶¶ 31-32). This would seem to eliminate the prejudice asserted by the Plaintiffs, leaving only the potential delay inherent in any stay. Accordingly, the balance of the relevant factors weighs in favor of granting the stay.[1]

---

[1] The Plaintiffs also argue that the Court should consider what it terms the Defendant's dilatory tactics in bringing this motion, noting that the Defendant "after nearly a year of litigating, only now seeks to stay the litigation based on a [sic] ex parte reexamination that they themselves did not even request." Dkt. No. 63 at 7-8. However, the Defendant acted promptly to seek a stay once the USPTO took action in September 2017. To the extent that the Plaintiffs fault the Defendant for not seeking reexamination itself at an earlier time, it is unclear to the Court what motivation the Defendant had to seek reexamination of the patent until it was sued for infringing it.

The Court is only granting the Defendant's motion to stay in part, however, because the Defendant has requested that the Court stay everything but its consideration of the Defendant's pending motion for partial summary judgment. Given the Defendant's position that the reexamination process could eliminate entirely the need to litigate this case, the Court finds that the interests of judicial economy are best served by staying the case in its entirety, including consideration of the pending motion, even though the pending motion does not directly involve validity or infringement issues. Accordingly, this case is **STAYED**. **Within 21 days of the date the reexamination process is completed by the USPTO**, the parties shall confer and file a joint motion to reopen the case and a proposed amended case management plan. The current final pretrial conference and trial dates are **VACATED**.[2] The pending motion for partial summary judgment (Dkt. No. 51) and related motion for oral argument (Dkt. No. 53) and motion to strike (Dkt. No. 58) are **denied** without prejudice to reassert them once the stay is lifted and a new case management plan is entered.

SO ORDERED: 2/8/18

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

---

[2] The Court notes that the parties already have sought and been granted an extension of their case management deadlines that rendered these dates obsolete. *See* Dkt. No. 48.